**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE**

KELLY RUSHING, JR.                                                                             PLAINTIFF

V.                                                                                        NO. 3:08CV-531-JDM

FLERLAGE MARINE CO.,
d/b/a SEA RAY OF LOUISVILLE, et al.                                   DEFENDANTS

## MEMORANDUM OPINION

The plaintiff has moved this court for summary judgment of his claims against one of the defendants, Donovan Marine, Inc. d/b/a Marpac on the basis that the apparent manufacturer doctrine, which has not yet been legislatively or judicially adopted in Kentucky, imposes strict product liability against Donovan Marine. The court has considered plaintiff's motion and all responses thereto, and is otherwise sufficiently advised. For the reasons stated herein, the court will deny the motion by separate order.

**I.**

Mr. Rushing was injured, and blinded in his left eye, when a boat tie-down strap allegedly snapped as he was strapping down his boat. The strap was part of the boat and trailer equipment package that Mr. Rushing purchased with a friend from Flerlage Marine, Inc., d/b/a Sea Ray of Louisville ("Flerlage Marine"). The boat and trailer were manufactured by a company named Brunswick Corporation. Flerlage Marine removed the tie-down straps originally included with the boat by Brunswick, however, and replaced them with straps sold by Donovan Marine, Inc., and marketed under the Donovan Marine's private label brand name "Marpac."

Donovan Marine does not manufacture the Marpac tie-down straps. Rather, it purchases tie-down straps from the companies that manufacture them, brands them, and then distributes the

straps to retailers. Marpac straps are purchased from one of two manufacturers: O'Neill Manufacturing, Inc. ("O'Neill') or Ocean Bio-Chem, Inc. d/b/a Star brite ("Star brite"). There exists no evidence in the record of this case that Donovan has or had any input in the design or manufacture of either the O'Neill or Star brite tie-down straps.

Plaintiff asserts that, although Donovan Marine did not actually manufacture the tie-down strap that allegedly injured him, it should nonetheless be subject to strict product liability as an "apparent manufacturer," pursuant to the doctrine articulated in the Restatement (Third) Torts: Product Liability § 14 (1998). Donovan Marine asserts that the apparent manufacturer doctrine has not been adopted by either Kentucky's legislature or its courts and should not be applied by this federal court sitting in diversity.

## II.

The Kentucky legislature has not explicitly adopted the apparent manufacture doctrine articulated decades ago in the Restatement (Second) of Torts § 400 (1965) and more recently in the Restatement (Third) of Torts: Products Liablity § 14 (1998). Nor is there any reported decision by a Kentucky state court explicitly adopting the doctrine, either.

Because this is a diversity action, and this court is therefore charged with determining how the courts of the Commonwealth of Kentucky would decide the issue. "In accordance with *Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938), when evaluating an undecided question of Kentucky law, a federal court sitting in diversity must make the best prediction, even in the absence of direct state precedent, of what the Kentucky Supreme Court would do if it were confronted with [the] question." *Combs v. International Ins. Co.*, 354 F.3d 568, 577-78 (6th Cir. 2004)(internal citations and quotations omitted). Federal courts must proceed with caution, however, when making pronouncements about state law. *Id.* at 577. A federal court sitting in

diversity is "not commissioned to take a position regarding the advisability or fairness of the state rule to be applied, but [must] determine the issue as would the highest court of the state." *Kurczi v. Eli Lilly & Co.,* 113 F.3d 1426, 1429 (6th Cir.1997). Thus, "federal courts hearing diversity matters should be extremely cautious about adopting 'substantive innovation' in state law." *Combs*, 354 F.3d at 578 (internal citations omitted).

This court predicts that, if given the opportunity, Kentucky's courts would not adopt the apparent manufacturer doctrine. Kentucky's legislature has not adopted the apparent manufacturer doctrine and its courts have not recognized the doctrine as applicable to product liability suits, in spite of ample time to do so since the doctrine was articulated forty-five years ago in the Restatement (Second) of Torts § 400 (1965) and twelve years ago in the Restatement (Third) of Torts: Products Liability in 1998.[1] This court presumes this is so because the apparent manufacturer doctrine cannot exist entirely peacefully with Kentucky's so-called "middleman" statute," K.R.S. § 411.340 (effective 1978),[2] which has been repeatedly upheld by Kentucky's courts.[3][4]

---

[1] In fact, except for the "learned intermediary doctrine," which was consistent with Kentucky's informed consent statute (as opposed to at odds with an existing statute, as is the case here), Kentucky's courts do not appear to have adopted any of the Restatement (Third) of Torts: Product Liability. *See Larkin v. Pfizer, Inc.*, 153 S.W.3d 758, 770 (Ky. 2004).

[2] The so-called "middleman statute" states: "In any product liability action, if the manufacturer is identified and subject to the jurisdiction of the court, a wholesaler, distributor, or retailer who distributes or sells a product ... sold by him in its original manufactured condition or package, or in the same condition such product was in when received by [him], shall not be liable to the plaintiff for damages arising solely from the distribution or sale of such product, unless [he], breached an express warranty or knew or should have known at the time of distribution or sale of such product that the product was in a defective condition, unreasonably dangerous to the user or consumer." Ky. Rev. Stat. Ann. § 411.340 (West).

[3] *See, e.g., West v. KKI, LLC*, 300 S.W.3d 184, 192 (Ky. App. 2008), *review denied* (Jan. 13, 2010).

[4] *But see Beverly v. MEVA Formwork Sys., Inc.*, 2010 WL 2305746, n.2 (unpublished)(E.D. Ky. 2010)(noting, in dicta, that "[t]he statute and the Restatement rule do not apply to exactly the same

continue...

The courts in other jurisdictions that have adopted the apparent manufacturer doctrine did so decades ago (for the most part) and thus the doctrine could not have been unknown to Kentucky's jurists.[5] Several of those decisions were recently superceded by statute.[6] Those courts that have adopted the doctrine in recent years, felt free to do so because their state legislatures had enacted legislation that was consistent, or at least not inconsistent, with the apparent manufacturer doctrine.[7] The same cannot be said of the Commonwealth of Kentucky.

Generally speaking, anyone in the stream of commerce – from the manufacturer, to the distributor, to wholesaler, to the retailer – is *potentially* strictly liable for damages caused by a defective product. As a matter of Kentucky statutory law, however, if the manufacturer of a defective product is identified and subject to the jurisdiction of the court, then the "middlemen" – namely those in the stream of commerce between the person who made the product and the ultimate consumer (*e.g.*, distributors like Donovan Marine) – are not potentially liable for harm caused by the allegedly dangerous product *unless* the product was altered from its original manufactured condition or packaging, *or* the "middleman" either (a) breached an express warranty or (b) "knew or should have known at the time of distribution or sale of such product that the product was in a defective condition unreasonably dangerous to the user or consumer."

---

[4]...continue
situations: KRS § 411.340 is meant to protect innocent middlemen who are selling someone else's products, whereas the Restatement rule applies where the product was put out under the defendant's name").

[5]*See Long v. U.S. Brass Corp.,* 333 F. Supp. 2d 999, 1003 (D. Colo. 2004)(listing several jurisdictions that have adopted the apparent manufacturer doctrine).

[6]*See Hebel v. Sherman Equipment,* 442 N.E.2d 199 (1982) (recognizing potential applicability of the apparent manufacturer doctrine under Illinois law)(*overruled by statute* as recognized in *Goesel v. Boley Int'l (H.K.) Ltd.* (664 F. Supp. 2d 923 (N.D. Ill. 2009)).

[7]*See Chevron USA, Inc. V. Aker Maritime, Inc.*, 604 F.3d 888, 865 (2010); *Long,* 333 F. Supp. 2d at 1001-1002; *Davis v. United States Gauge,* 844 F. Supp. 1443, 1446 (D. Kan. 1994; *Warzynski v. Empire Comfort Systems, Inc.*, 401 S.E.2d, 801, 803 (N.C. App. 1991).

*See* Ky. Rev. Stat. §411.340. It makes no exception for wholesalers, distributors, and retailers who sell another's product under their own brand.

This does not mean that there is no potential means under Kentucky law for imposing strict product liability on those who might qualify as "apparent manufacturers" under the Restatement (Second) of Torts § 400 or Restatement (Third) of Torts: Product Liability § 14. Kentucky's "middleman statute" establishes a statutory preference for imposing liability on the actual manufacturer of an allegedly defective product, if that person can be identified and is subject to the court's jurisdiction. If the actual manufacturer cannot be identified, or is not subject to the court's jurisdiction, the distributor is potentially on the hook. So, too, is he if he altered the condition of the product he purchased from the manufacturer, or breached an express warranty, or knew or should have known that the product was in a defective condition unreasonably dangerous to the consumer.

### III.

It is possible that the plaintiff may develop a sufficient factual record to warrant recovery against Donovan Marine. He may not, as a matter of law, seek to do so pursuant to the "apparent manufacturer doctrine," however. Neither Kentucky's legislature, nor its jurists have recognized that doctrine's applicability to suits in the Commonwealth and, for the reasons stated above, this court does not predict that a Kentucky court would do so if given the opportunity to decide the motion currently before the court. This court will therefore deny plaintiff's motion for summary judgment by separate order entered concurrently with this memorandum opinion.

**DATE:**

cc: counsel of record