UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

KELLY RUSHING, JR.                                                               PLAINTIFF

V.                                                                           3:08-CV-00531-JDM

FLERLAGE MARINE CO.                                                           DEFENDANTS
DONOVAN MARINE, INC.
AND
OCEAN BIO-CHEM, INC.

AND

DONOVAN MARINE, INC.                              DEFENDANT/THIRD-PARTY PLAINTIFF

V.

OCEAN BIO-CHEM, INC.                                              THIRD-PARTY DEFENDANT

### MEMORANDUM OPINION

There are several motions pending before the court, all of which are interrelated to varying degrees (docket nos. 92, 98, 99, and 110). Given the complexity of the inter-relationships and the energetic advocacy of counsel, the court has taken a longer than customary time to evaluate the arguments and consult the applicable law. This has not been done out of a lack of respect for the parties and their interests, but rather because of it. The motions before the court are both substantive and significant (a motion to vacate judgment, a motion to dismiss, a motion for summary judgment, and a motion to certify questions of law to the Kentucky Supreme Court), and so the court has devoted additional time and resources to their consideration.[1]

**I.**

---

[1] The court acknowledges with appreciation Brad Leneis, a student at the Georgetown University Law Center, who assisted with the research of this opinion.

A.      **Factual Background**

In March 2007, Kelly Rushing purchased a boat and trailer combination from Flerage Marine Co. d/b/a/ Sea Ray of Louisville (Flerage) in Louisville, Kentucky. The combination was designed and manufactured by Brunswick Corporation. As designed, the combination includes the boat, the trailer, and straps to secure the boat to the trailer. However, Flerage did not provide Mr. Rushing with the original straps from Brunswick. Instead, Flerage provided straps from its in-store inventory of straps stocked for individual sale. These straps were distributed by Donovan Marine, Inc. (Donovan) and manufactured by Ocean Bio-Chem, Inc. d/b/a Star Brite (Star Brite). Flerage's salesman attached the boat to the trailer with these straps and discarded the packaging and instructions. He allegedly did not show Mr. Rushing how to use the straps.

Although Star Brite manufactured the straps, nothing on the strap identified Star Brite as the manufacturer. Instead, they were labeled "MARPAC." Donovan owns the MARPAC brand name and uses it to label some of the products it distributes, although it does not manufacture the products itself. Prior to Mr. Rushing's accident, Donovan Marine purchased tie-down straps from two companies: O'Neill Manufacturing, Inc. and Star Brite. Donovan Marine originally purchased all of its tie-down straps from Star Brite, and created an internal part number for those straps, but later decided to purchase tie-down straps from O'Neill Manufacturing instead. When Donovan Marine made the supplier switch, it did not assign a new part number to O'Neill Manufacturing's straps, but continued to distribute its remaining Star Brite inventory and O'Neill Manufacturing inventory under the same part number.

On September 2, 2007, one of the tie-down straps on the boat and trailer combination Mr. Rushing purchased allegedly snapped open as Mr. Rushing secured the boat after use. The buckle struck him in the left eye, causing severe injury and leaving the eye permanently blind.

-2-

B.  **Procedural History**

Mr. Rushing sued Brunswick (the boat and trailer manufacturer), Flerage (the boat dealer), Donovan (the strap distributor), and O'Neill (the apparent strap manufacturer) in Jefferson Circuit Court in Louisville.  He alleged negligence, strict products liability, breach of warranty, and failure to warn, against each party.  He filed the suit on August 29, 2008, four days before Kentucky's one-year statutory limitations period for his personal injury claims expired.  Donovan removed the case to this court.  Initial discovery revolved around determining the strap's manufacturer, and Brunswick was dismissed early on when the parties discovered that Flerage had exchanged the Brunswick strap for a MARPAC strap.  Although Donovan listed only itself and O'Neill as entities with information regarding the MARPAC strap's manufacture in its initial disclosures, Donovan named both O'Neill and Star Brite as potential manufacturers in its answers to Mr. Rushing's interrogatories on June 22, 2009 (approximately nine months after the lawsuit was filed).  When further discovery showed that Star Brite actually manufactured the MARPAC strap, defendant Donovan filed a motion for leave to file a third-party complaint against Star Brite on August 19, 2009, and O'Neill filed a motion for summary judgment on October 13, 2009.  The court granted O'Neill's motion for summary judgment because the evidence established it was not the strap's manufacturer and allowed Donovan to file its third-party complaint against Star Brite.   Mr. Rushing also requested leave amended his complaint to include claims directly against Star Brite.  His request was granted and the amended complaint deemed filed as of the date of the request, but because the amended complaint was not filed until  March 18, 2010.  Star Brite answered and then moved to dismiss Mr. Rushing's complaint as time barred.

Before the court ruled on Star Brite's motion, Flerage (the boat dealer) moved for summary judgment based on Kentucky's "middleman statute," which limits the liability of

intermediary wholesalers, retailers, and distributors in products liability actions when the product's manufacturer is identified.[2]

Mr. Rushing also filed a motion for summary judgment against Donovan based on the common law apparent manufacturer doctrine, which Kentucky's Supreme Court has not expressly adopted. Mr. Rushing also moved to certify to the Kentucky Supreme Court the question of the apparent manufacturer doctrine's applicability in the state. In another motion, Mr. Rushing moved to certify the question of whether the statute of limitations period should be tolled by the discovery rule.

In a memorandum opinion, this court denied Mr. Rushing's motions for summary judgment and to certify the question of the applicability of the apparent manufacturer doctrine in Kentucky; but subsequently agreed to hear oral argument, in light of the interlocking procedural questions involved across all the pending motions. After considering the arguments presented in open court, in the parties' motions, and for the reasons stated herein, the court will affirm the holding of its prior memorandum opinion, deny Mr. Rushing's request to certify the question of whether the discovery rule tolls the statutory limitations period, grant Star Brite's motion to dismiss, and deny Flerage's summary judgment motion.

## II.

**A.    Reconsideration of the Court's Prior Ruling Regarding the Apparent Manufacturer Doctrine**

Mr. Rushing asks the court to vacate its prior decision which denied Mr. Rushing's motion for summary judgment against Donovan on the basis of a common-law apparent manufacturer doctrine. After careful reconsideration, the court will deny Mr. Rushing's request.

---

[2] The middleman statute is part of the larger Kentucky Product Liability Act (KPLA), which places further restrictions on common-law products liability actions.

The Third Restatement of Torts: Products Liability codifies the apparent manufacturer doctrine. It provides: "One engaged in the business of selling or otherwise distributing products who sells or distributes as its own a product manufactured by another is subject to the same liability as though the seller or distributor were the product's manufacturer." Restatement (Third) of Torts: Prods. Liab. § 14 (1994). Since Donovan put its MARPAC label on the strap, Donovan would arguably be an "apparent manufacturer." Mr. Rushing urges this court to predict that the Kentucky Supreme Court would adopt this Restatement section wholesale, pointing to a long history of Restatement adoption in Kentucky, see, e.g., Larkin v. Pfizer, Inc., 135 S.W.3d 758, 769 (Ky. 2004) (adopting Restatement (Third) of Torts: Prods. Liab. § 6(d) (learned intermediary doctrine)); Yancey v. Hamilton, 786 S.W.2d 854, 857 (Ky. 1989) (adopting Restatement (Second) of Torts § 566 (1977) (defamatory communications doctrine)); Dealer's Transport Co. v. Battery Distributing Co., 402 S.W.2d 441, 446-47 (Ky. 1965) (adopting Restatement (Second) of Torts § 402A (strict products liability doctrine)); and to similar predictions by this court, see, e.g., James v. Meow Media, Inc., 90 F. Supp. 2d 798, 811 (W.D. Ky. 2000) (predicting adoption of Restatement (Third) of Torts: Prods. Liab. § 19(a) (definition of "product" in products liability cases)).

As the Third Restatement itself acknowledges, however, the apparent manufacturer doctrine has limited application in the modern products liability landscape in most jurisdictions. See Restatement (Third) of Torts § 14, cmt. b. Kentucky is not an exception. Historically, the apparent manufacturer doctrine became redundant as a stand-alone rule when a jurisdiction adopted strict liability for product defect cases. See Restatement (Third) of Torts § 14, cmt. a. Courts adopting the apparent manufacturer doctrine reasoned that a retailer should not benefit from sales induced by reliance on its reputation for quality, and yet avoid liability in tort because it was not directly responsible for negligence in a product's manufacture. See, e.g., Davidson v.

Montgomery Ward & Co., 171 Ill. App. 355, 367 (Ill. App. Ct. 1912).  Courts adopting strict liability, however, go further.  Under strict liability, all sellers may be held liable, regardless of their status as apparent manufacturers.  See Restatement (Third) of Torts § 1; Restatement (Second) of Torts § 402A (1965).  Thus, when Kentucky adopted strict liability as the common law rule for products liability cases, Dealer's Transport Co. v. Battery Distributing Co., 402 S.W.2d 441, 446-47 (Ky. 1965), it reached a legal result equivalent to adopting manufacturer doctrine as well.

In 1978, however, the Kentucky General Assembly limited the scope of all common law product liability actions when it passed the Kentucky Products Liability Act (KPLA).  See Reda Pump Co. v. Finck, 713 S.W.2d 818, 820 (Ky. 1986).  In particular, the middleman statute, K.R.S. § 411.340 (2005), part of the KPLA, limits liability to the product's manufacturer if the manufacturer "is identified and subject to the jurisdiction of the court."  Under the terms of the apparent manufacturer doctrine, however, the apparent manufacturer would remain liable even if the actual manufacturer is identified.  The full-fledged adoption of the doctrine would thus be in tension or outright conflict with the KPLA.[3]

The Kentucky Supreme Court is unlikely to adopt a Restatement provision that conflicts with Kentucky's statutory law.  See Steel Techs., Inc. v. Congleton, 234 S.W.3d 920, 929-30 (Ky. 2007); Commonwealth ex rel. Cowan, 828 S.W.2d 610, 614 (Ky. 1992) ("Judicially created common law must always yield to the superior policy of legislative enactment . . . .").  In Steel Techs, the Kentucky Supreme Court declined to adopt a Restatement provision at odds with

---

[3] At least as regards the doctrine as stated in Restatement (Second) of Torts § 400.  Section 14 of the Third Restatement acknowledges in comment b that "to the extent that a statute specifies responsibilities, the statutory terms control."  In Kentucky, this Restatement comment approach would basically cause the apparent manufacturer doctrine to turn itself off upon adoption.  Adopting the doctrine as stated in the Third Restatement, therefore, would have the same effect as not adopting the doctrine at all.

Kentucky common law. And, as Cowan illustrates, when presented with a conflict between a statute and a common law doctrine, the Kentucky Supreme Court defers to the statute. Cowan, 828 S.W.2d at 614. To the extent that an intermediary distributor, seller, or wholesaler might be held liable even if the true manufacturer were identified in the action, the apparent manufacturer doctrine would conflict with the middleman statute. Thus, this court continues to predict that the Kentucky Supreme Court would not adopt the apparent manufacturer doctrine as law in Kentucky. As a result, this court will deny Mr. Rushing's motion to vacate its prior decision and will deny his motion for summary judgment against Donovan based on that doctrine.

**B.     Star Brite's Motion to Dismiss**

Star Brite (the actual manufacturer of the strap) in turn, moves to dismiss Mr. Rushing's claims against it as untimely filed. An injured party in Kentucky must file a claim for compensation in tort within one year of the accrual of the cause of action against a defendant. K.R.S. 413.140(1)(a). The cause of action accrues once the injured party knows or should know that she has been harmed. Perkins v. Northeastern Log Homes, 80 S.W.2d 809, 819 (Ky. 1991). For most personal injury claims, therefore, the cause of action accrues on the date of injury. See McLain v. Dana Corp., 16 S.W.3d 320, 326 (Ky. App. 1999); Hazel v. General Motors Corp., 869 F. Supp. 435, 438-39 (W.D. Ky. 1994) (memorandum opinion). In a limited class of cases, however, the injured party may not learn she has been injured until much later. See Louisville Trust Co. v. Johns-Manville Prod's. Corp., 580 S.W.2d 497, 501 (Ky. 1979) (asbestos); Tomlinson v. Siehl, 459 S.W.2d 166, 167 (Ky. 1970) (medical malpractice). In these later-discovery cases, the claim does not accrue on the actual date of injury, effectively tolling the statute of limitations until the date the injured party knows or should know of the harm. This limited exception is known as the "discovery rule."

Mr. Rushing urges this court to apply the discovery rule in these circumstances and deny

Star Brite's motion to dismiss. Although he indisputably knew of his physical injury, and the cause of it, he argues that he could not have known that he was harmed by Star Brite's conduct within a year of the accident, because he could not have known that Star Brite manufactured the strap until Donovan identified Star Brite during discovery.

Mr. Rushing's argument has appeal as a matter of apparent fairness. During the oral argument, he provided the court with examples of the packaging and labeling of both types of straps Donovan distributed under the MARPAC brand. There was nothing on the Star Brite manufactured strap, or its packaging, which identified Star Brite as the actual manufacturer. He was therefore entirely dependent on Donovan (the distributor) to identify the actual manufacturer, and that process was complicated by Donovan's decision to use same identification number for straps manufactured by both O'Neill and Star Brite.

However, under Kentucky law, the discovery rule does not delay the accrual of a claim with respect to discovering the identity of the injuring party.[4] McLain v. Dana Corp., 16 S.W.3d 320, 326 (Ky. App. 1999). In Dana Corp., a piece of workplace machinery allegedly injured an employee. Id. at 322. The employee sued I.S.I. Industries, the maker of one of the machine's component parts, under the impression that I.S.I. manufactured the completed machine. Id. When the employee learned during discovery that I.S.I. did not manufacture the completed machine, he attempted to sue the actual manufacturer. Id. at 323. The court dismissed the claim as time-barred, because "a person who has knowledge of an injury is put on notice to investigate and discover, within the statutory time constraints, the identity of the tortfeasor." Id. at 326 (quotation and footnote omitted). Similarly, Mr. Rushing did not learn the identity of the strap's

---

[4] The discovery rule applies only where "the fact of injury" or the "offending instrumentality" is not immediately evident or discoverable. Fluke Corp. v. Lemaster, 306 S.W.3d 55, 60 (Ky. 2010). Both the fact of injury and the instrumentality – the tie-down strap – were evident in Mr. Rushing's case, leaving only the identity of the strap's manufacturer in question.

manufacturer until after the one-year statute of limitations had run. Like the employee in McLain, he cannot rely on the discovery rule in Kentucky to toll the statute of limitations.

This arguably might be an appropriate case for the court to consider equitable estoppel because of the highly unusual discovery limitations placed on Mr. Rushing. Kentucky's legislature has enacted a tolling statute, Kentucky Revised Statute 413.190(2). By its plain terms, the statute applies only when the party asserting the defense "concealed himself or by any other indirect means obstructed the prosecution of the action," i.e., he bears some responsibility for plaintiff's failure to timely identify him. Ky. Rev. Stat. 413.190(2). Kentucky's courts have implied that this statute might have broader application by declaring that it "is simply a recognition in law of an equitable estoppel or estoppel in pais to prevent fraudulent or inequitable application of a statute of limitation," and thus perhaps might permit equitable estoppel even if the party asserting the defense was not the one whose act or conduct misled or deceived plaintiff and thereby prevented him from timely instituting his suit. Emberton v. GMRI, Inc., 299 S.W.3d 565, 573 (Ky. 2009)(citing Munday v. Mayfair Diagnostic Laboratory, 831 S.W.2d 912, 914 (Ky. 1992) and Adams v. Ison, 249 S.W.2d 791 (Ky. 1952)).

There exists no evidence that Donovan or Star Brite fraudulently concealed Star Brite's identity from Mr. Rushing. Yet, Donovan's packaging and labeling of the Star Brite manufactured strap nevertheless failed to indicate the actual manufacturer's identity and prevented Mr. Rushing from discovering Star Brite's potential liability until Donovan disclosed it. The court need not determine how expansive Kentucky's courts might be in their interpretation of the tolling statute, or their application of equitable estoppel generally, however, because Mr. Rushing's claim against Star Brite would still be time-barred even under the most generous interpretation or application.

This is so because Mr. Rushing waited until just a few days before his one-year

-9-

limitations period expired to file his first complaint. His attorney then sought discovery with the initially-named defendants, but did not learn that Star Brite was also a manufacturer of straps distributed under the MARPAC brand until almost 300 days later, when Donovan identified Star Brite in response to discovery requests. One could look to Rule 11 of the Federal Rules of Civil Procedure and assert that the Mr. Rushing should not be penalized for taking the time to clarify Star Brite's role, but any uncertainty about whether there existed sufficient support for a claim against Star Brite ceased when Donovan sought leave to file a third-party complaint against Star Brite in August 2009.

Thus, even if the court excluded the time between the filing of the complaint and when Donovan identified Star Brite, and *also* excluded the time between which Donovan identified Star Brite and when Mr. Rushing could be confident that Star Brite almost certainly was the manufacturer (i.e., when Donovan requested leave to file a third-party claim against Star Brite), it still would not suffice to preserve the claim. Mr. Rushing only had a few days held in reserve from the limitations period, because he waited until just a few days before the statute would have run.[5] He did not have enough potentially reserved time to wait approximately nine months after Donovan identified Star Brite, or approximately seven months after Donovan sought leave to file a third-party complaint against Star Brite, or even twenty days after the court deemed Donovan's third-party complaint entered, before tendering an amended complaint naming Star Brite as a defendant.

Unfortunately for Mr. Rushing, his direct claim against Star Brite is time-barred, and neither application of Kentucky's version of the discovery rule nor any statutory or common law equitable estoppel, can overcome Star Brite's statute of limitations defense. The court will

---

[5]He might havem ore time if Kentucky applied the discovery rule where the identity of the manufacturer is unknown, but that is not the law. See discussion supra.

therefore grant Star Brite's motion to dismiss.  This may be a result which leaves a gap in the law by effectively denying recovery to an injured party reliant on a product's distributor to identify the offending product's actual manufacturer, but under diversity jurisdiction this court must apply state law as it exists.  See Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).  This result could be changed by the Kentucky judiciary or its General Assembly, but not by a federal court sitting in diversity.

**C.     Flerlage's Motion for Summary Judgment**

Flerage (the boat and trailer dealer) moves for summary judgment based on the KPLA's middleman statute.  The statute provides in full:

> In any product liability action, if the manufacturer is identified and subject to the jurisdiction of the court, a wholesaler, distributor, or retailer who distributes or sells a product, upon his showing by a preponderance of the evidence that said product was sold by him in its original manufactured condition or package, or in the same condition such product was in when received by the wholesaler, distributor, or retailer, shall not be liable to the plaintiff for damages arising solely from the distribution or sale of such product, unless such wholesaler, distributor, or retailer, breached an express warranty or knew or should have known at the time of distribution or sale of such product that the product was in defective condition, unreasonably dangerous to the user or consumer.

K.R.S. § 411.340.  The statute consists of two conditional clauses.  In construing a statute, the court strives to "give effect to the intent of the General Assembly."  King Drugs, Inc. v. Commonwealth, 250 S.W. 3d 643, 645 (Ky. 2008).  The court should "derive that intent . . . from the plain meaning of the language;" however, the court may look beyond the plain language if the statute is "ambiguous . . . or otherwise frustrates a plain reading."  See id.

The first clause of the statute shields an intermediary in the chain of sale from strict liability, but only if (a) the manufacturer is identified and subject to the jurisdiction

-11-

of the court and (b) the intermediary did not alter the product or packaging before sale. The second clause dictates that, even if the manufacturer is identified and subject to the jurisdiction of the court, intermediaries remain liable selling products that they knew or should have known were unreasonably dangerous.

Flerage did not meet one of the conditions stated in the plain language of the statute's first clause.  In order to take advantage of the statute, the product must be "sold by [the intermediary] in the same condition such product was in when received" from the manufacturer.  K.R.S. § 411.340.

The product Mr. Rushing purchased from Flerlage was a boat and trailer combination manufactured by the Brunswick Corporation.  The combination ordinarily would include straps manufactured by Brunswick, but Flerlage discarded the Brushwick straps and replaced with MARPAC straps sold by Donovan and manufactured by Star-Brite.  Flerage admits to removing Donovan's packaging when it swapped out the straps, but asserts that it did nothing to alter or affect the inherent nature of the Star Brite strap.  That may be true, but it is beside the point.

Flerlage argues that the definition of the product for the purpose of application of the middleman statute is a narrow one (i.e., the strap) and asserts that it sold the product "in its original manufactured condition or package, or in the same condition such product was in when received by the wholesaler," because it merely removed and discarded the strap's packaging.   This argument certainly has logical appeal, but this court predicts that the Kentucky Supreme Court is likely to determine that a product under the middleman statute consists of "'the finished product bargained for by the buyer' rather than its individual components."  See Giddings & Lewis, Inc. v. Industrial Risk Insurers, ___S.W.3d ___, 2011 WL 246154 *9 (Ky. June 16, 2011) (quoting Shipco 2295, Inc. v.

-12-

Avondale Shipyards, Inc., 825 F.2d 925, 929-30 (5th Cir.1987) (finalization and publication pending).

With respect to Flerlage, the finished product bargained for by Mr. Rushing was a Brunswick boat and trailer combination.  As customarily delivered by Brunswick, the manufacturer, to a retailer, such as Flerlage, that combination would include Brunswick straps.  And, in response to O'Neil's interrogatories, Flerage admitted that in its sale to Mr. Rushing, the Star-Brite straps were "not sold [to him] separately" from the Brunswick boat and trailer combination.  By swapping out the original Brunswick straps with another manufacturer's straps, Flerage thereby altered Brunswick's product from the condition it was in when Flerage received it.

Summary judgment is not proper because Flerlage cannot meet the middleman statute's first condition.  The court will therefore deny Flerlage's motion.

**III.**

Procedurally speaking, this case has been unusually complex for a product liability action.  As a matter of policy reflected in various statutes and judicial opinions, the most efficient avenue for recourse when a person is injured because of a product is a tort claim made directly by the plaintiff against the offending product's manufacturer.   In this case, however, plaintiff no longer has any direct claims against any of the identified putative and actual manufacturers.  Plaintiff dismissed Brunswick, the manufacturer of the boat and trailer combination that originally included straps different from the one that injured him.  The court granted O'Neill's motion for summary judgment when discovery revealed it did not make the strap that injured Mr. Rushing.  And, now, the court will dismiss Mr. Rushing's direct claims against Star Brite, even though it did manufacture the strap, because those claims are time barred.

Star Brite is not dismissed from the action entirely, as Donovan's third-party claims against it are still viable. But, those claims are derivative, and unless plaintiff can establish that either Flerlage or Donovan breached an express warranty or negligently sold a product in a defective condition, unreasonably dangerous to the user or consumer, they may be able to avail themselves of Kentucky's middleman statute. If so, this will likely strike Mr. Rushing as an unfair result, and the nuances of competing policy considerations with respect to natural and corporate persons, who have equal stature under the law, are unlikely to provide any palliative explanation.

To eliminate all possible uncertainty, the court could, as requested, ask the Kentucky Supreme Court to decide whether this court's predictions about the future of state law are correct, but the court cannot justify such a expense of judicial and party resources, unless it believed in good faith that its predictions might be wrong. Unfortunately for plaintiff, the court does reach that conclusion and therefore declines to certify any of the questions presented to the Kentucky Supreme Court.[6]

DATE:   September 29, 2011

cc: counsel of record

*James D. Moyer*
**James D. Moyer**
**United States Magistrate Judge**

---

[6] "The decision whether or not to utilize a certification procedure lies within the sound discretion of the district court." Pennington v. State Farm Mut. Auto. Ins. Co., 553 F.3d 447, 449-50 (6th Cir.2009) (quoting Transam. Ins. Co. v. Duro Bag Mfg. Co., 50 F.3d 370, 372 (6th Cir.1995)) (internal quotation marks omitted). "Certification is most appropriate when the question is new" and is also appropriate when state law is unsettled, but the "federal courts generally will not trouble our sister state courts every time an arguably unsettled question comes across our desks." Id. (citations and internal quotation marks omitted). In considering a motion to certify a question to the Kentucky Supreme Court, the Sixth Circuit has identified several factors for courts to consider, including the likelihood of recurrence of the precise question raised, whether certification is appropriate based on the question presented, and the inevitable delay inherent in the certification process. American Fidelity Bank & Trust Co. v. Heimann, 683 F.2d 999, 1002 (6th Cir. 1982). After consideration of these factors, the court declines to certify either question presented by Mr. Rushing to the Kentucky Supreme Court.